**David E. NANCE, Plaintiff,**

v.

**Martin R. ULFERTS, and William F. Herrbach, Defendants.**

**No. 2:02CV0166 AS.**

United States District Court, N.D. Indiana, Hammond Division.

Aug. 19, 2003.

Michael P McIlree, McIlree and McIlree, Valparaiso, IN, Clifford W Shepard, Attorney at Law, Indianapolis, IN, for plaintiff.

Randy Harmon Wyllie, Wieser and Sterba, Schererville, IN, Philip E Kalamaros, Hunt Suedhoff Kalamaros LLP, SB/IN, South Bend, IN, for defendant.

Philip E Kalamaros, Hunt Suedhoff Kalamaros LLP, SB/IN, South Bend, IN, for counter-claimant.

Michael P McIlree, McIlree and McIlree, Valparaiso, IN, Clifford W Shepard, Attorney at Law, Indianapolis, IN, for counter-defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

This matter is before the Court on Defendants', Martin R. Ulferts ("Ulferts"), and William F. Herrbach ("Herrbach"), motion for summary judgment in their favor and against Plaintiff on all counts set forth in Plaintiff's Complaint. This matter is also before the Court on Plaintiff's, David E. Nance, ("Nance"), cross-motion for partial summary judgment against Defendants, Ulferts and Herrbach ("Defendants"). Plaintiff is moving for summary judgment on Count 1 of Plaintiff's Complaint and on Defendants' affirmative defense that any violations of the Fair Debt Collection Practices Act, ("FDCPA") 15 U.S.C. § 1692, *et seq.* by the Defendants was the result of a *bona fide* error. Nance requests that his cross-motion for partial summary judgment be granted on the

grounds that Defendants, Ulferts and Herrbach, violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(10), 1692f, 1692f(1), 1692g(a) and 1692g(a)(1). Nance also moves that Defendants' motion for summary judgment be denied for failure to establish the requirements of 15 U.S.C. § 1692k(c).

## I. Background

Nance entered into a loan with Loans Til Payday, Inc. on February 16, 2001. When Nance allegedly failed to repay the loan, Loans Til Payday, Inc. employed Ulferts, with the Law Offices of William F. Herrbach, to assist in collecting the monies owed due to the alleged defaulted loan and alleged dishonored check. A letter, dated April 18, 2001, from Mr. Ulferts and Mr. Herrbach ("Defendants") to Nance was the only written or oral communication ever sent regarding the debt allegedly owed to Loans Til Payday, Inc. The loan entered into by Nance held an interest rate of 72%. The Indiana Supreme Court in *Livingston, et al. v. Fast Cash USA, Inc.*, 753 N.E.2d 572 (Ind.2001), held that the minimum loan finance charged permitted by I.C. § 24–4.5–3–508(7) when charged by a licensed supervised lender . . . is limited to 36% by I.C. § 24–4.5–3–508(2). As part of Mr. Nance's transaction with Loans Til Payday Inc., he was required to give them a post-dated check as payment on the Consumer Loan Agreement.

These facts are what brings us to the present motions at hand. The Defendants have moved for summary judgment in their favor and the Plaintiff, Nance, has filed a cross-motion for summary judgment. Nance claims that the Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* The Defendants claim however that any violation that occurred was the result of a *bona fide* error. The Defendants claim that at the time of the April 18, 2001, correspondence, Ulferts reasonably believed that such correspondence was in compliance with both current Indiana State law and federal law governing the recovery of damages for check deception and pursuant to the terms of the Deferred Presentment Agreement.

## II. Standard of Review

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Bragg v. Navistar Int'l Trans. Corp.*, 164 F.3d 373 (7th Cir.1998). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56); *Larimer v. Dayton Hudson Corp.*, 137 F.3d 497 (7th Cir.1998). A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts shows that there is a genuine [material] issue for trial.'" *Id.* The nonmoving party

cannot rest on its pleadings, *Weicherding v. Riegel,* 160 F.3d 1139 (7th Cir.1998); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918 (7th Cir.1994); nor may that party rely upon conclusory allegations in affidavits. *Smith v. Shawnee Library Sys.,* 60 F.3d 317, 320 (7th Cir.1995).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560 (7th Cir.1996). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson,* 477 U.S. at 252–55, 106 S.Ct. 2505.

### III. Analysis

Plaintiff contends that Defendants committed their various torts when they attempted to collect the amount purportedly due pursuant to a returned check which was tendered as security for the payment by the Plaintiff to Loans Til Payday, Inc. on a payday loan Plaintiff had obtained from them. Specifically, Plaintiff contends that Defendants failed to state or otherwise misrepresented the amount of the purported debt owed to Loans Til Payday Inc. by Plaintiff by seeking to collect any amount. Additionally, to the extent Defendants were entitled to collect some amount, that Defendants misrepresented the amount which they were entitled to collect and the remedies available for a returned check which was tendered as a payment on a loan which was governed by the Indiana Uniform Consumer Credit Code, ("IUCCC") I.C. § 24–4.5–1–1, *et seq.*

The crux of the arguments made by Plaintiff and Defendants seem to focus on Nance claiming a violation of the FDCPA and the Defendants asserting that if a violation occurred they should be absolved from liability for their violation(s) of the FDCPA pursuant to the *bona fide* error defense. While many of the arguments in these two motions overlap, in the interest of clarity, which has not necessarily been afforded to this Court by the parties, this Court will attempt to address the Plaintiff's cross motion and all that it entails foremost.

Nance, in his cross-motion for partial summary judgment, requests that partial summary judgment be granted on the grounds that Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(10), 1692f, 1692f(1), 1692g(a) and 1692g(a)(1). Nance also moves for denial of the Defendants' motion for summary judgment on the grounds that they failed to establish the requirements of 15 U.S.C. § 1692k(c).

This Court feels it necessary to first address some initial matters. It seems to be undisputed that Ulferts was a debt collector as defined under 15 U.S.C. § 1692a(6). Similarly, there does not seem to be a dispute that Herrbach, who employed Ulferts and benefitted from his efforts, also met this criteria. Moreover, it has been held by the Seventh Circuit on more than one occasion that the FDCPA utilizes the principals of vicarious liability. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, LLC,* 214 F.3d 872, 876 (7th Cir.2000); *Pettit v. Retrieval Masters Creditors Bureau, Inc.,* 211 F.3d 1057, 1059 (7th Cir.2000).

### A. 15 U.S.C. §§ 1692f and 1692f(1)

Mr. Nance seeks vindication for what he alleges is Defendants' violation of §§ 1692f and 1692f(1) which provides:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or

expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. §§ 1692f and 1692f(1).

## B. 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), and 1692e(10)

Mr. Nance also alleges that Defendants' violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), and 1692e(10), which provides in pertinent part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

\* \* \*

(2) The false representation of—

(A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully received by any debt collector from collection of a debt.

\* \* \*

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), and 1692e(10).

Nance's claims for violations of §§ 1692e and 1692f seem to go hand in hand and therefore will be address together. Nance's basic argument is that by attempting to collect on the Consumer Loan Agreement and check, both of which included interest in excess of that permitted by Indiana law, Defendants attempted to collect illegal interest from Mr. Nance,

thereby violating the FDCPA. Nance contends that the Defendants violated §§ 1692e and 1692f, in the following three ways: 1) attempting to collect illegal loan and illegal interest; 2) attempting to collect treble damages and attorney's fees on a returned check tendered as security for a payment on a contract governed by the IUCCC; and 3) if treble damages and attorney's fees are available for a returned check tendered as security for a payment on a contract governed by the IUCCC, then by representing treble damages and attorney's fees were due prior to filing of a lawsuit and determination by a Judge.

The Defendants focus on two arguments concerning the allegations brought by Nance in regards to §§ 1692e and 1692f. Their first argument centers on the premise that parties are free to contract and therefore Defendants could seek treble damages and attorney's fees for the check; and their second argument is that prior to the *Livingston* decision they had no reason to believe that they were attempting to collect a debt that was invalid or falsely represented because at the time of correspondence, April 18, 2001, the debt was not illegal.

■ In regards to Defendants' argument that they did not violate § 1692f, they rely on the basis that the collection of any amount authorized by an agreement is not a violation of § 1692f. The Defendants claim that the agreement entered into by Plaintiff and Loans Til Payday, Inc., allowed for the collection of money for the loan, treble damages and attorney's fees. However, it seems the question must be begged not as to whether the contract permitted the imposition of such but whether such was permitted by law. "There are instances however in which an agreement is not an enforceable contract despite proper formation. Where a properly formed agreement contravenes public

policy of Indiana, for instance, courts have traditionally said it is void and unenforceable." *Lawson v. First Union Mortgage Company,* 786 N.E.2d 279, 284 (Ind.App. 2003). The analysis seems to end once Defendants rest their argument based on the language set forth in a contract for an illegal loan.

■ The Defendants do however, raise another argument in regards to treble damages and that is that under Indiana law, treble damages may be sought on behalf of check deception. Pursuant to I.C. 34–24–3–1, a person who commits the crime of check deception may be sued for damages of three times the face amount of the check, plus reasonable attorney fee and court costs. *See, Veach v. Sheeks,* 316 F.3d 690 (7th Cir.2003). In order to prove entitlement to treble damages under I.C. 34–24–3–1 for an unpaid check, a person must show that the person whose check returned unpaid violated I.C. 35–43–5–5. *See,* I.C. 34–24–3–1. Under I.C. 34–43–5–5(f)(1), it is stated that a person does not commit the crime of check deception when such order is postdated. The Plaintiff claims and the Defendants do not deny or offer any proof to the contrary, that the check Nance issued to Loans Til Payday, Inc., was postdated. Therefore, this Court must grant Plaintiff's cross-motion for summary judgment as to the violation under 15 U.S.C. §§ 1692f and 1692f(1).

■ In presenting their next argument that they did not violate 15 U.S.C. §§ 1692e, the Defendants claim that prior to the *Livingston* decision they had no reason to believe that they were attempting to collect a debt that was invalid or falsely represented because at the time of correspondence, April 18, 2001, the debt was not illegal. However, *Livingston* did not change the law, but merely held such loans, as made to Plaintiff in this case, to be in violation of Indiana law and void under then existing law. The decision did not create new law, or pass any new regulation, but rather applied existing law to a new situation, "payday· loans." The *Livingston* decision does not change the fact that the loans interest rates were in excess of 200% and therefore in violation of Indiana law. This Court's reading and analysis of the *Livingston* decision will be discussed in much further detail when this Court addresses the issue(s) surrounding the *bona fide* error defense. Based on the foregoing, this Court must grant Plaintiff's cross-motion for partial summary judgment with respect to Defendants' violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), and 1692e(10).

### C. 15 U.S.C. § 1692g

Nance claims that the Defendants violated 15 U.S.C. § 1692g by failing to state the amount of the debt and by overshadowing and curtailing the rights afforded to consumers thereunder. In support of the first part of his argument, Nance relies on the pertinent portion of 15 U.S.C. § 1692g(a)(1), which provides:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer written notice containing—

(1) The amount of the debt;

15 U.S.C. § 1692g(a)(1). Nance argues that the letter did not state the full amount and that therefore, the Defendants violated the FDCPA. Nance contends that because the Defendants leave the determination of treble damages and even Defendants' ability to request or determine Defendants' entitlement to treble damages and attorney's fees up to the unsophisticated consumer to decide, that they violated § 1692g. "Fair notice is not

what the FDCPA demands. By withholding a full and complete disclosure of the amount of the debt owed by Plaintiff, Defendants, as a matter of law, violated § 1692g(a)(1)." *See, Shea v. Codilis,* 2000 WL 336567, 2000 U.S. Dist. LEXIS 4202 (N.D.Ill.2000).

Nance also argues that the letter sent by Ulferts to Nance on April 18, 2001, failed to explain the inherent contradiction between the debtor's rights under the FDCPA and the filing of a lawsuit against him or her. The Defendants' letter provided that "even if you dispute the debt or request verification, I may file suit against you if you fail to respond within ten days." Nance claims that while the FDCPA does not regulate when a debt collector can file a lawsuit, because the letter failed to explain the inherent contradiction between Nance's rights under the FDCPA and the filing of a lawsuit against him, that such letter violated the FDCPA.

■ The Defendants' only opposition to the allegation that they violated 15 U.S.C. § 1692g, is that these claims were not properly plead before this Court by Nance and that he failed to timely amend his Complaint to include such. However, in *Walker v. Thompson,* 288 F.3d 1005 (7th Cir.2002), Judge Posner reiterated the broad notice pleading standard of the federal rules:

> As the Supreme Court has recently reaffirmed, and we have held time and again, there is no requirement in federal suits of pleading the facts or the elements of a claim with the exceptions listed in Rule 9.

*Id.* at 1007; *see also, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

The Defendants devoted their only argument in opposition to whether they violated 15 U.S.C. § 1692g, by focusing on whether or not Plaintiff had adequately pled the facts and elements of his § 1692g

claim. The Defendants argue that Nance did not properly plead his 15 U.S.C. § 1692g claim in the Complaint and that this bars Nance from pursuing these claims. Mr. Nance's Complaint specifically pointed out that he brought this action against the Defendants for their alleged violations of the FDCPA, 15 U.S.C. § 1692, *et seq.* In view of the liberal pleading standards, this was sufficient to advise the Defendants they were getting sued for their violations of the FDCPA, including a violation under 15 U.S.C. § 1692g.

■ This Court must note that "[i]t is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such on appeal." *Id.* Nance, under the liberal pleading standards applied by the Seventh Circuit and Supreme Court alike, sufficiently advised the Defendants of their violation under § 1692g of the FDCPA.

■ Furthermore, precedent instructs that a debt collector violates the FDCPA by representing a potential for fees as a part of the debt owed. *See, Veach v. Sheeks,* 316 F.3d 690, (7th Cir.2003); *see also, Bernstein v. Howe,* 2003 WL 1702254 (S.D.Ind. March 31, 2003). The *Bernstein* Court held that while *Veach* was not decided by the Seventh Circuit until after the date of the letter, it nonetheless was unreasonable of Howe to believe that it was permissible under the FDCPA to inform a debtor that the amount of the debt owed included "attorney's fees" which had not yet been incurred as of the time of the letter, and would not be incurred unless or until "legal proceedings" were instituted against Bernstein. *See Id.* Therefore, based on the foregoing, Nance is entitled to judgment as a matter of law that the

Defendants violated 15 U.S.C. § 1692g(a) and 1692g(a)(1).

## D. *Bona Fide* Error Defense

■ An overarching theme in this matter, as well as a considerable basis for Defendants' motion for summary judgment is the Defendants' proffered defense under the *bona fide* error defense. There are three elements to the *bona fide* error defense: (1) the violation is not intentional; (2) the violation resulted from *"bona fide* error"; and (3) the collector maintains procedures reasonably adapted to avoid errors. *See generally, Jenkins v. Heintz*, 124 F.3d 824, 828–34 (7th Cir.1997). The Defendants begin their *bona fide* error defense argument on the ground that the alleged violation(s) was not intentional. They claim that due to Ulferts experience and knowledge, as well as his conversations with other counsel and judges, that he was observant of current decisions affecting his work. However, it is clear that Defendants' action did not involve following the language of the relevant Indiana statutes. Regardless of this, before this Court can apply the *bona fide* error defense to Defendants' alleged violation of the FDCPA, provided by 15 U.S.C. § 1692k(c), Defendants must show that they had procedures in place "reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).

The Defendants claim that they had an implemented plan to make sure that the FDCPA and Indiana laws were complied with in all collection efforts. They did so by making sure only Ulferts oversaw every collection, personally reviewed each file, and made arrangements within the law office that he was to be the only person dealing with debtors. Therefore, they claim that if any violation of the FDCPA occurred, it should be construed to have been unintentional and to have occurred in spite of reasonable procedures adapted to protect against such violations.

Courts are divided on the issue of whether the FDCPA's *bona fide* error defense applies to mistakes of law. The Seventh Circuit has not yet taken a position on the issue; at most, it has assumed that the *bona fide* error defense was applicable to mistakes of law in cases in which that assumption was not outcome determinative because the *bona fide* error defense was not available to the defendant for another reason. *See, Nielsen v. Dickerson*, 307 F.3d 623, 641 (7th Cir.2002). The Seventh Circuit similarly has assumed without deciding that the "not intentional" language of § 1692k(c) refers to intent to violate the FDCPA, not intent to take the action that was taken. *See, Id.*

■ This court makes those same assumptions. To the extent that the *bona fide* error defense is applicable to mistakes of law, however, the mistakes must not only be unintentional, they must also be reasonable. *Id.* (*citing Hulshizer v. Global Credit Servs., Inc.*, 728 F.2d 1037, 1038 (8th Cir.1984) (finding no basis to invoke the bona fide error defense where "the language of the statute was unambiguous and the creditor's disregard of that language was undisputed"); *see also*, Janet Flaccus, *Fair Debt Collection Practices Act: Lawyers and the Bona Fide Error Defense*, 2001 ARK. L. NOTES 95 (2001) (arguing that the bona fide error defense should be available when the law is unsettled, but not when it is reasonably clear)).

■ In reading *Livingston*, this Court does not do so prospectively, but rather reads it as an extension of law that was already well in existence. While "payday loans" are a somewhat new concept, the law embodied within it is not. Therefore, this does not seem an instance where the *bona fide* error defense should be available as the law was not unsettled, but rather was reasonably clear. The 1968 Uniform Consumer Credit Code was originally

adopted by this State's Legislature in 1971 and is referred to as the Indiana Uniform Consumer Credit Code. Rates on loan finance charges for supervised loans are governed by Indiana Code section 24–4.5–3–508(2) and minimum loan finance charges are governed by Indiana Code section 24–5–3–508(7). More specifically, subsection 3–508(2) provides in relevant part: A "supervised loan" is defined as a "consumer loan in which the rate of the loan finance charge exceeds twenty-one percent (21%) per year...." I.C. § 24–4.5–3–501(1). In relevant part, "loan finance charge" is defined as "all charges payable directly or indirectly by the debtor and imposed directly or indirectly by the lender as an incident to the extension of credit...." I.C. § 24–4.5–3–109(1)(a). The loan finance charge, calculated according to the actuarial method, may not exceed the equivalent of the greater of the following: the total of thirty-six percent (36%) per year on that part of the unpaid balances of the principal which is three hundred dollars ($300)....

In turn, subsection 3–508(7) dictates in relevant part: With respect to a supervised loan not made pursuant to a revolving loan account, the lender may contract for and receive a minimum loan finance charge of not more than thirty dollars ($30). Since 1994, the minimum loan finance charge has been subject to bi-annual indexing on July 1 of even numbered years and thus is adjusted automatically once every two years. I.C. § 24–4.5–3–508(6); I.C. § 24–4.5–1–106. The current minimum loan finance charge is $33. *See generally, Livingston,* 753 N.E.2d at 574–75.

The *Livingston* Court held that "[e]ven if short term payday loans were never contemplated by the IUCCC, they are nonetheless subject to and controlled by that statute." *Id.* at 577. The Court therefore concluded that the minimum loan finance charges provided for in I.C. § 24–4.5–3–508(7) are limited by the maximum 36% APR allowed in I.C. § 24–4.5–3–508(2). Therefore, this Court interprets the *Livingston* decision as applying existing law to the payday loan cases and therefore believes the result must be reached that the *bona fide* error defense cannot apply to the case at hand.

### E. 15 U.S.C. § 1692e(5)

The Plaintiff also make a claim in his Complaint under § 1692e(5), and while Plaintiff did not include this section in his cross-motion for partial summary judgment, the Defendants did move for its decision via summary judgment.[1] Under this section, a debt collector cannot threaten to take any action that cannot legally be taken or that is not to be taken. The Defendants do not address this claim specifically so this Court is left to infer that the Defendants' are basing their request for judgment as a matter of law in their favor on the ground of *bona fide* error. This Court has already addressed the Defendants' *bona fide* error defense and sees no difference as to this section of Plaintiff's Complaint. Therefore, because the Defendants are not entitled to the *bona fide* error defense, the Defendants' motion for summary judgment under § 1692e(5) must fail.

### F. 15 U.S.C. § 1692d

The Defendants argue that their conduct did not violate § 1692d because it could not be said to have been harassing, oppressive or abusive. Plaintiff did not move for

---

1. The Defendants have moved for summary judgment as to all claims brought by Plaintiff in his Complaint. The Court is construing this to mean all claims contained in Count 1 and Count 2 as these appear to be the only remaining claims against the Defendants in this matter.

summary judgment pursuant to any claims under this section, however the Defendants did so and therefore such will be addressed. There seems to be nothing about the means used by Ulferts and Herrbach which could be construed to constitute a violation of § 1692d. The April 18, 2001 letter, which undisputedly is the only form of communication between these two parties, did not rise to the level of harassing, oppressive, or abusive as set forth under § 1692d. Therefore, the Defendants are entitled to judgment as a matter of law on Plaintiff's claim under 15 U.S.C. § 1692d.

### G. I.C. 35–43–5–3(a)(2)

 Even though Nance is only seeking determination via summary judgment on Count 1 of his Complaint, the Defendants have moved for summary judgment as to Count 2 of Plaintiff's Complaint. Count 2 of Plaintiff's Complaint alleges that as a result of Ulferts' and Herrbach's violation of I.C. 35–43–5–3, the Plaintiff sustained damages and is entitled to relief under I.C. 34–24–3–1. The relevant portions of I.C. 35–43–5–3 state:

> (a) A person who: (2) knowingly or intentionally makes a false or misleading written statement with intent to obtain property, employment, or an educational opportunity commits deception, a class A misdemeanor.

However, such recovery is predicated on relief under I.C. 34–24–3–1, which in relevant part states:

> If a person suffers a pecuniary loss as a result of a violation of I.C. 35–43, the person may bring a civil action against the person who caused the loss....

Because Nance has failed to establish any evidence of pecuniary loss due to the statement or actions of Ulferts and Herrbach, and likewise has not established that the Defendants knowingly or intentionally made a false or misleading written state-

ment with intent to obtain property ..., this Court must enter summary judgment in favor of Defendants as to the claims brought by Nance under I.C. 35–43–5–3 in Count 2 of his Complaint.

### IV. Conclusion

Based on the foregoing, Plaintiff's cross-motion for partial summary judgment is hereby **GRANTED** in regards to Defendants' violation of §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(10), 1692f, 1692f(1), 1692g(a), 1692g(a)(1). Furthermore, Defendants' motion for summary judgment is hereby **GRANTED** only as to claims made pursuant to 15 U.S.C. § 1692d and I.C. 35–43–5–3. The rest of Defendants' motion for summary judgment is **DENIED,** thereby **GRANTING** the relevant portion of Plaintiff's cross-motion for partial summary judgment, based on the fact that the Defendants failed to establish the requirements of 15 U.S.C. § 1692k(c), elements of the *bona fide* error defense. The Court will retain jurisdiction to address the remaining issues of appropriate damages, attorneys' fees, and costs.

**IT IS SO ORDERED.**