Robert TODD et al., Plaintiffs,

v.

WELTMAN, WEINBERG & REIS, CO., L.P.A. et al., Defendants.

No. C–1–03–171.

United States District Court, S.D. Ohio, Western Division.

Aug. 3, 2004.

Stephen R. Felson, Robert Brand Newman, Newman & Meeks Co. LPA, Cincinnati, OH, for Plaintiffs.

Allen Jeffrey Reis, Weltman, Weinberg & Reis, Michael Nelson Schaeffer, Kemp, Schaeffer, Rowe & Lardiere, Columbus, OH, Glenn E. Algie, Weltman, Weinberg & Reis Co. LPA, Cincinnati, OH, Jeffrey Charles Turner, Surdyk, Dowd & Turner Co. LPA, Dayton, OH, for Defendants.

## ORDER DENYING MOTIONS FOR JUDGMENT ON THE PLEADINGS

DLOTT, District Judge.

This matter comes before the Court on the Motion of Defendant Mark N. Wiseman for Judgment on the Pleadings (doc. # 40) and the Motion of Defendant[ ] Weltman, Weinberg & Reis, Co., L.P.A., for Judgment on the Pleadings Pursuant to Fed.R.Civ.P. 12(c) (doc. # 55). For the following reasons, the Court **DENIES** Defendants' motions.

## I. STANDARD FOR A RULE 12(C) MOTION

Federal Rule of Civil Procedure 12(c) governs motions for judgment on the pleadings. In reviewing a motion under Rule 12(c), the Court accepts as true the

factual allegations of the complaint. *See Pilgrim v. Littlefield,* 92 F.3d 413, 415 (6th Cir.1996); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1368 (2d ed.1990). The Court may, however, "consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *New England Health Care Employees Pension Fund v. Ernst & Young, LLP,* 336 F.3d 495, 501 (6th Cir.2003) (addressing motions brought pursuant to Rule 12(b)(6)). Additionally, to the extent that the instant motion questions the existence of subject matter jurisdiction, the Court "may look beyond the jurisdictional allegations in the complaint and consider whatever evidence is submitted." *Fairport Int'l Exploration, Inc. v. Shipwrecked Vessel Known as The Captain Lawrence,* 105 F.3d 1078, 1081 (6th Cir.1997), *vacated on other grounds,* 523 U.S. 1091, 118 S.Ct. 1558, 140 L.Ed.2d 790 (1998). A motion for judgment on the pleadings "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n,* 946 F.2d 1233, 1235 (6th Cir.1991).

## II. FACTUAL BACKGROUND

This case is a putative class action brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1601 *et seq.* Plaintiff Robert Todd brings a claim against Defendant Weltman, Weinberg & Reis. Co., L.P.A. ("Weltman"), counsel for one of his creditors, and Plaintiff Helen Williams, by her next friend Angela McGowan, brings a claim against Defendant Mark N. Wiseman, counsel for one of her creditors. Plaintiffs' claims are based on affidavits that Defendants executed and filed in support of non-wage garnishment proceedings. Mr. Todd brings suit against Weltman on behalf of all judgment debtors in the State of Ohio with respect to whom Weltman filed such an affidavit, and Ms. Williams brings suit against Mr. Wiseman on behalf of all judgment debtors in the State of Ohio with respect to whom Mr. Wiseman filed such an affidavit.[1] Pursuant to the standard for Rule 12(c) motions as set forth above, the Court takes as true the allegations set forth in the Amended Complaint, except to the extent that Defendants raise contrary evidence in questioning the existence of subject matter jurisdiction.

Section 2716.11 of the Ohio Revised Code governs the commencement of non-wage garnishment proceedings:

A proceeding for garnishment of property, other than personal earnings, may be commenced after a judgment has been obtained by a judgment creditor by the filing of an affidavit in writing made by the judgment creditor or the judgment creditor's attorney setting forth all of the following:

(A) The name of the judgment debtor whose property, other than personal earnings, the judgment creditor seeks to garnish;

(B) That the affiant has good reason to believe and does believe that the person named in the affidavit as the garnishee has property, other than personal earnings, of the judgment debtor that is not exempt under the law of this state or the United States; [and]

(C) A description of the property.

Certain sorts of assets, including Social Security payments, are statutorily exempt

---

**1.** Plaintiffs William Carter and Jean Riley brought class claims against Christopher L. Lardiere that have settled. (*See* doc. # 66.)

from attachment by creditors. *See, e.g.,* 42 U.S.C. § 407(a); Ohio Rev.Code § 2329.66. Upon the filing of an affidavit pursuant to section 2716.11, the clerk of the appropriate Ohio court "shall" issue to the garnishee copies of an order of garnishment of property that "shall bind the property, other than personal earnings, of the judgment debtor in the possession of the garnishee at the time of service." Ohio Rev. Code § 2716.13. The statute provides that the order of garnishment and notice to answer must be "substantially" in a certain form as provided in section 2716.13(B):

> The judgment creditor in the above case has filed an affidavit, satisfactory to the undersigned, in this Court stating that you have money, property, or credits, other than personal earnings, in your hands or under your control that belong to the judgment debtor, and that some of the money, property or credits may not be exempt from garnishment under the laws of the State of Ohio or the laws of the United States.

Ohio Rev.Code § 2716.13(B). The clerk of the court also must warn the judgment debtor in writing that if he does not request a hearing within five days, he waives his right to a hearing and some of his money, property or credits will be paid to the judgment creditor to satisfy the debtor's debt. *See* Ohio Rev.Code § 2716.13(C)(1).

Both Mr. Todd and Ms. Williams allege that they are recipients of Supplemental Security Income ("S.S.I.") who had default judgments entered against them in Hamilton County, Ohio Municipal Court and that Defendants Weltman and Wiseman sought to collect on those judgments by filing garnishment proceedings. On January 21, 2003, Weltman attorney Nicholas K. Rohner signed a form affidavit seeking garnishment of Mr. Todd's bank account at Fifth Third Bank, swearing, *inter alia:*

> I HAVE GOOD REASON TO BELIEVE AND DO BELIEVE THAT THE GARNISHEE NAMED IN SECTION (A) BELOW HAS PROPERTY OTHER THAN PERSONAL EARNINGS OWING BY THEM TO SAID JUDGMENT DEBTOR THAT IS NOT EXEMPT UNDER THE LAWS OF THE STATE OF OHIO AND THE UNITED STATES ....

(*See* doc. # 17 ex. A.) In aid of garnishment of Ms. Williams' account at Provident Bank, Mr. Wiseman submitted to the Hamilton County court a partially-completed form similar to that completed by Mr. Rohner, including nearly identical language in the affidavit section signed by Mr. Wiseman. (*See id.* ex. B.) Plaintiffs allege that Weltman had no factual basis for a belief that Mr. Todd's account contained non-exempt assets, that Mr. Wiseman had no factual basis for a belief that Ms. Williams' bank account contained non-exempt assets, that no judgment debtor examination preceded the signing of the affidavits, and that Defendants undertook no discovery to inquire whether the monies in Plaintiffs' savings accounts were exempt.

Upon the filing of each of these affidavits, the Municipal Court issued an order of garnishment, and Plaintiffs' respective banks debited money from their accounts. The forms completed by Defendants each include a section entitled "Court Order and Notice of Garnishment." (*See id.* exs. A, B.) This section includes the language provided for in Ohio Revised Code section 2716.13(B), stating, *inter alia,* that

> THE JUDGMENT CREDITOR IN THE ABOVE CASE HAS FILED AN AFFIDAVIT, SATISFACTORY TO THIS COURT, STATING THAT YOU HAVE MONEY, PROPERTY, OR CREDITS, OTHER THAN PERSONAL EARNINGS, IN YOUR HANDS

OR UNDER YOUR CONTROL THAT BELONG TO THE JUDGMENT DEBTOR AND THAT SOME OF THE MONEY, PROPERTY, OR CREDITS MAY NOT BE EXEMPT FROM GARNISHMENT UNDER THE LAWS OF OHIO OR THE UNITED STATES.

(*Id.* ex. A. *See also id.* ex. B.) The form order also contains language ordering the garnishee (in these cases, Fifth Third Bank or Provident Bank) to complete the "Answer of the Garnishee" section of the form and to return it and the proper amount of money to the clerk of the court. After completing and filing such a form, the garnishee must deliver a copy to the judgment debtor. *See* Ohio Rev.Code § 2716.13(B). A Municipal Court judge signed the order portion of the forms submitted by Weltman and Mr. Wiseman, and those forms were filed in Hamilton County Municipal Court.[2] According to the Amended Complaint, the entire amount garnished from Mr. Todd's account was exempt from garnishment, since it consisted of Mr. Todd's S.S.I. payments and his wife's short-term disability funds. Ms. Williams also alleges that the funds in her account were exempt since her sole source of income was S.S.I. payments. Mr. Todd filed a request for garnishment hearing, but Ms. Williams did not. The Hamilton County Municipal Court ordered that the funds be returned to Mr. Todd, dismissed those proceedings, and released the garnishee.[3]

Plaintiffs bring this action pursuant to the FDCPA, alleging that Defendants' filing of the affidavits in aid of garnishment with no factual basis for a belief that Plaintiffs' bank accounts contained non-exempt assets constituted violations of 15 U.S.C. §§ 1692e and 1692f. Section 1692e provides in relevant part that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Under § 1692f, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

## III. ANALYSIS

■ Weltman and Mr. Wiseman have each filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Defendants argue that: 1) under the *Rooker–Feldman* doctrine, the Court lacks subject matter jurisdiction to hear Plaintiffs' claims, 2) Plaintiffs' claims are barred by res judicata or collateral estoppel, 3) the doctrine of witness immunity prevents Plaintiffs from succeeding on their claims, and 4) Plaintiffs' allegations do not support a claim under the FDCPA. The Court first addresses the issue of subject matter jurisdiction, as a federal court must satisfy itself of its jurisdiction over the subject matter of a case before it considers the merits of a case. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101–02, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

**2.** In the copies of the form attached as Exhibits A and B to the Amended Complaint, the signature line for the Municipal Court judge is blank. However, the form states that the judge's signature is found only on the "original." An examination of docket sheets found on the Hamilton County Clerk of Courts' website (www.courtclerk.org) indicates that a Municipal Court judge did sign the orders prior to the filing of the forms in the garnishment actions against Plaintiffs. Additionally, at least Mr. Todd appears to concede in his brief

that a judge signed the order portion of the form attached to the Amended Complaint as Exhibit A. (*See* doc. # 59 at 4.)

**3.** In their Amended Complaint, Plaintiffs do not address whether they requested hearings. The information pertaining to this issue was garnered from the docket sheets in Plaintiffs' garnishment cases, one of which is attached to Weltman's motion and both of which are available on the Hamilton County Clerk of Courts' website.

A. *Rooker–Feldman*

The *Rooker–Feldman* doctrine takes its name from two Supreme Court cases. In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), the Supreme Court explained that lower federal courts lack jurisdiction to hear appeals from state court judgments because the Supreme Court alone has that power. The Court broadened this rule in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486, 483 n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), by holding that lower federal courts lack jurisdiction to hear "challenges to state court decisions in particular cases arising out of judicial proceedings" or to decide questions "inextricably intertwined" with state court judgments. These two decisions form the basis of a doctrine that now bears their name. *See generally* Symposium, *The Rooker–Feldman Doctrine*, 74 Notre Dame L.Rev. 1081 (1999). Justice Marshall, concurring in *Penzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), defined "inextricably intertwined" as follows:

> [I]t is apparent, as a first step, that the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.

"In practice this means that when granting relief on the federal claim would imply that the state-court judgment on the other issues was incorrect, federal courts do not have jurisdiction . . . ." *Pieper v. Am. Arbitration Ass'n, Inc.*, 336 F.3d 458, 460 (6th Cir.2003), *cert. denied*, 540 U.S. 1182, 124 S.Ct. 1420, 158 L.Ed.2d 84 (2004).

Defendants argue that the *Rooker–Feldman* doctrine precludes this Court from addressing the merits of Plaintiffs' claims because granting relief on those claims would undermine the Hamilton County Municipal Court's findings that the affidavits in question were valid and satisfactory, as well as the Municipal Court's orders based on those findings.

Plaintiffs claim that Weltman and Mr. Wiseman violated the FDCPA when they filed affidavits stating that they had a reason to believe that Plaintiffs had non-exempt assets in their bank accounts, without having a basis for any such belief. Under their theory, Plaintiffs may prevail on their claims regardless of whether they in fact had non-exempt assets in the relevant accounts, as long as Plaintiffs can prove that, at the time they filed their affidavits, Defendants had no basis for stating that they believed that Plaintiffs had non-exempt assets. Defendants argue that *Rooker–Feldman* bars Plaintiffs' claims because granting Plaintiffs relief on their claims would undermine the Municipal Court's findings that the affidavits are "satisfactory to this court." However, on the Amended Complaint and the state court records before it, the Court cannot say that the Municipal Court's statement, pursuant to the statutory form order, that the affidavits were "satisfactory" evinces a conclusion by the Municipal Court that the affidavits were factually accurate. There is no indication in the Amended Complaint, the state court documents, or the statutory provisions establishing garnishment procedures that Municipal Court judges make any determination as to the factual accuracy of an affidavit submitted pursuant to Ohio Revised Code section 2716.11 prior to signing the section 2716.13(B) order. Rather, a section 2716.13(B) order "involve[s] only a preliminary determination not going to the merits of whether the property was subject to garnishment."

*Fifth Third Bank of Columbus, Inc. v. Bowman*, No. 89AP–515, 1990 WL 12379, at *3 (Ohio Ct.App. Feb. 13, 1990). Thus, success by Plaintiffs on their claims would not undermine the state court's findings that the affidavits were "satisfactory" and that garnishment could proceed.

The Seventh Circuit's decision in *Long v. Shorebank Development Corp.*, 182 F.3d 548 (7th Cir.1999), is instructive. There, the plaintiff claimed, *inter alia*, that a creditor violated the FDCPA's prohibitions against falsely representing the character, amount and legal status of a debt by presenting her with notice and a complaint that falsely stated that she owed the creditor money. Although the plaintiff also challenged the correctness of the eviction order that was issued based on that same complaint, the panel held that the plaintiff's FDCPA claim based on the false representations to her was not barred by *Rooker–Feldman* because the alleged FDCPA violations were "independent of and complete prior to the entry of the eviction order." *Id.* at 556. "It makes no difference that Long may also deny the correctness of the eviction order in pursuing these claims," explained the court. *Id.* Similarly, here, the sole action forming the basis of Plaintiffs' FDCPA claims, the filing of a false affidavit, was complete before the state court took any action.

Additionally, while the Sixth Circuit has not addressed the issue squarely, other circuits have concluded that *Rooker–Feldman* does not apply "where federal plaintiffs have not been given a reasonable opportunity to raise their federal claims in the state proceedings." *See Simes v. Huckabee*, 354 F.3d 823, 827 (8th Cir.2004)

(citing cases). *See also Peterson Novelties, Inc. v. City of Berkley*, 305 F.3d 386, 393 (6th Cir.2002) (noting without question district court's application of rule that *Rooker–Feldman* applies "where the party against whom the doctrine is being applied had the opportunity to raise the issue [in] a prior state court proceeding, and the issue was adjudicated in the prior state court proceeding") (citation and quotation marks omitted); *In re Stoddard*, 248 B.R. 111, 121 (Bankr.N.D.Ohio 2000) (*Rooker–Feldman* does not apply if "there was no reasonable opportunity to raise the claim at issue"). Ohio law provides that any hearing on the garnishment "will be limited to a consideration of the amount of [the judgment debtor's] money, property, or credits, other than personal earnings, in the possession or control of the garnishee, if any, that can be used to satisfy all or part of the judgment you owe to the judgment creditor." Ohio Rev.Code § 2716.13(C)(1)(a). The law does not authorize debtors to raise in a hearing challenging the garnishment any issue as to whether the affiant had a sufficient basis for filing an affidavit in support of garnishment. In fact, an Ohio appellate court has held that while such an affidavit is a prerequisite to initiation of a garnishment proceeding, Ohio law does not require the affiant to have personal knowledge [4] about the sought-after funds and thus ordinarily the affiant's testimony is irrelevant and the court may properly refuse to allow the debtor to cross-examine the affiant about her affidavit in a hearing challenging the garnishment. *See Bowman*, 1990 WL 12379, at *2–4. While they might have argued within the constraints of the state garnishment proceedings that their funds

---

4. Although the affidavit language provided by statute and employed by Defendants does not indicate that the affidavit has personal knowledge, that does not mean that Plaintiffs' claims, predicated on an allegation that the affidavits are false, necessarily fail. The affidavit language does provide that the affiant "has good reason to believe and does believe" what he says in the affidavit, and Plaintiffs allege that Defendants had no basis for believing that Plaintiffs' accounts had non-exempt assets.

were exempt, such arguments would have touched upon the alleged falsity of Defendants' affidavits, the issue at the heart of Plaintiffs' FDCPA claim, "only tangentially." *Long,* 182 F.3d at 559. Plaintiffs certainly could not have sought the fully panoply of remedies afforded by the FDCPA, which may include attorney's fees and monetary damages beyond actual damages. *See* 15 U.S.C. § 1692k. Thus, Plaintiffs' FDCPA claims encompass much more than the issues that might have been brought before the state court in the garnishment proceedings. *See Long,* 182 F.3d at 559 (citing remedies available under the FDCPA as reason why state court eviction order does not bar FDCPA claim under *Rooker–Feldman*). In short, Plaintiffs could not have raised their FDCPA claims, or even sought to prove the factual predicates of those claims, in the state court action. Therefore, the Court cannot conclude that Plaintiffs' FDCPA claims are "inextricably intertwined" with a state court judgment and will not decline to exercise jurisdiction.

## B. Res Judicata and Collateral Estoppel

Defendants make related arguments based on res judicata, or claim preclusion, and collateral estoppel, or issue preclusion. Generally, claim preclusion refers to the effect of a judgment in foreclosing litigation of a claim that has not been litigated, but should have been advanced in an earlier suit, while issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been actually litigated and decided. *See In re Fordu,* 201 F.3d 693, 703 (6th Cir.1999) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)). Under Ohio

law,[5] claims are not precluded under the doctrine of claim preclusion unless those claims were or could have been litigated in a prior action. *See Hapgood v. City of Warren,* 127 F.3d 490, 493 (6th Cir.1997). Because, as explained *supra,* Plaintiffs could not have raised their FDCPA claims, or any other claims based on the alleged falsity of Defendants' affidavits, in the Ohio garnishment proceedings, those claims are not barred by the doctrine of claim preclusion.

Under the doctrine of issue preclusion, "if an issue of fact or law actually is litigated and determined by a valid and final judgment, such determination being essential to that judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Hicks v. De La Cruz,* 52 Ohio St.2d 71, 369 N.E.2d 776, 777 (1977). Defendants argue that Plaintiffs cannot succeed on their claims because the Municipal Court has already determined that the Defendants' affidavits were not false. However, for the reasons set forth in its discussion of *Rooker–Feldman, supra,* the Court cannot conclude that the Municipal Court actually and necessarily decided that averments that Defendants made in the affidavits were factually true when they found that the affidavits were "satisfactory to this court" and issued orders of garnishment. Plaintiffs' claims are therefore not barred by the doctrines of claim or issue preclusion.

## C. Witness Immunity

Next, Defendants argue that Plaintiffs' claims against them are barred by the doctrine of witness immunity. In *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), the Supreme Court concluded that the Civil Rights Act

---

**5.** In determining what preclusive effect to give a state court judgment, a federal court must look to the state court's preclusion rules.

*See Hapgood v. City of Warren,* 127 F.3d 490, 493 (6th Cir.1997).

of 1871 (codified at 42 U.S.C. § 1983) did not abrogate the English common law doctrine providing that parties and witnesses were immune from subsequent damages liability for their testimony in judicial proceedings. Consequently, the Court held that § 1983 did not authorize a claim for damages against a police officer for giving perjured testimony at a criminal trial. *See id.* at 340–41, 103 S.Ct. 1108. The basis for the common law doctrine was that "in damages suits against witnesses, 'the claims of the individual must yield to the dictates of public policy, which requires that the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible.'" *Id.* at 332–33, 103 S.Ct. 1108 (quoting *Calkins v. Sumner*, 13 Wis. 193, 197 (1860)). Without immunity from damages, witnesses might be reluctant to testify, and those witnesses who do testify might shade their testimony to avoid liability. *See id.* at 333, 103 S.Ct. 1108. *Briscoe* has been cited by the Sixth Circuit, albeit in a similar case about allegedly false testimony by police officers in a criminal proceeding, for the general proposition that "[i]t is well-settled that witnesses are granted absolute immunity from suit for all testimony provided in judicial proceedings." *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir.1999). It appears, however, that the Sixth Circuit has applied this doctrine infrequently, if at all, to immunize from suit witnesses other than police officers or other government officials.[6]

The rationales behind the common law witness immunity doctrine do not support affording Defendants witness immunity for their alleged actions here. In this context, there is little fear that "witnesses" such as Messrs. Rohner and Wiseman will fail to come forward to file affidavits in support of garnishment. Plaintiffs allege that Messrs. Rohner and Wiseman had no first-hand knowledge of the subject of their affidavits when they filed them. Moreover, the affidavits themselves do not purport to be based on personal knowledge. Thus, Messrs. Rohner and Wiseman are not first-hand witnesses whose failure to offer information would obstruct the "ascertainment of truth," but, rather, are attorneys acting as representatives and therefore are fungible. Additionally, the Court need not be concerned that "witnesses" such as these will shade their testimony to avoid liability, as the testimony in question is Messrs. Rohner and Wiseman's completion of a form affidavit. Thus, on the facts alleged, the Court finds that Defendants are not immune from suit on the basis of the witness immunity doctrine.[7]

### D. Applicability of the FDCPA

Defendants also seek dismissal on the ground that Plaintiffs' allegations do not state a claim under the FDCPA. First,

---

6. Additionally, the Supreme Court has excluded from this doctrine testimony by "complaining witnesses," such as a police officer who submits an affidavit in support of an arrest warrant application. *See Malley v. Briggs*, 475 U.S. 335, 340–41, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). The Court's reasoning was that when the Civil Rights Act was enacted in 1871, "the generally accepted rule was that one who procured the issuance of an arrest warrant by submitting a complaint could be held liable if the complaint was made maliciously and without probable cause." *See id.*

7. Defendants cite *Beck v. Codilis & Stawiarski, P.A.*, No. 4:99cv485–RH, 2000 U.S. Dist. LEXIS 22440, at * 17–21 (N.D.Fla. Dec. 26, 2000) and *Etapa v. Asset Acceptance Corp.*, Civil Action No. 03–86–KSF (E.D. Ky. April 29, 2004), in which district courts applied the witness immunity doctrine to dismiss FDCPA claims based on facts similar to those before the Court here. Those opinions are not controlling authority, however, and, as the Court finds the rationale for giving witnesses immunity from suit inapplicable to this case, the Court declines to follow those opinions' holdings.

Mr. Wiseman argues that the FDCPA does not apply to documents filed in civil actions. However, the cases that he cites for this proposition hold merely that a summons and complaint cannot constitute "the initial communication with a consumer" triggering notice requirements under 15 U.S.C. § 1692g.[8] Even to the extent that these opinions are helpful in interpreting the term "communication" as used throughout the FDCPA, adoption of these cases' reasoning would not necessarily doom Plaintiffs' claims under §§ 1692e and 1692f, since those sections do not explicitly require a "communication" to establish a violation.

■■■■ Defendants also raise arguments particular to Plaintiffs' claims under § 1692e, which establishes a violation for the use of false, deceptive or misleading representations in the collection of a debt. Courts disagree whether the legislative history of the FDCPA[9] indicates that Congress intended § 1692e to create liability only for misrepresentations made to a debtor, not misrepresentations made to a court of law. Compare Kropelnicki v. Siegel, 290 F.3d 118, 127–28 (2d Cir.2002) (questioning in dicta the tenability of liability under § 1692e based on misrepresentations made to a debtor's attorney since, "[w]here an attorney is interposed as an intermediary between a debt collector and

a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior") with Beck v. Codilis & Stawiarski, P.A., No. 4:99cv485–RH, 2000 U.S. Dist. LEXIS 22440, at *17 (N.D.Fla. Dec. 26, 2000) (law firm violated § 1692e when it submitted false affidavits regarding fees to court, but plaintiffs cannot recover because defendant attorneys protected by witness immunity). Forbidding debt collectors from making false statements to courts accords with the FDCPA's purpose of protecting consumers from unfair and harassing debt collection practices. Additionally, under the Ohio statutory garnishment scheme, once the garnishee completes its section of the order of garnishment form, which includes the debt collector's affidavit, it is distributed to the debtor, who may be misled by statements about non-exempt assets contained therein. Therefore, the Court will not grant Defendants judgment on the pleadings on Mr. Todd and Ms. Williams' claims under § 1692e.

■■■■ Plaintiffs also seek relief under § 1692f, which guards against unfair and unconscionable conduct in the collection of a debt.[10] Defendants cite Wilson v. Business & Professional Credit Management, No. CV85–L–709, 1986 U.S. Dist. LEXIS 31002 (D.Neb. Aug. 26, 1986), for the prop-

---

**8.** See Vega v. McKay, 351 F.3d 1334 (11th Cir.2003); McKnight v. Benitez, 176 F.Supp.2d 1301, 1308 (M.D.Fla.2001). Moreover, a judge of this Court has held that a summons and complaint can constitute an "initial communication" under § 1692g. See Sprouse v. City Credits Co., 126 F.Supp.2d 1083, 1089 n. 8 (S.D.Ohio 2000) (Rice, J.).

**9.** The purpose of the Act was "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors." S. Rep. 95–382, at 1 (1997), reprinted in 1977 U.S.C.C.A.N. 1695, 1696.

**10.** In particular, Plaintiffs allude to § 1692f(1), which specifies that "[t]he collec-

tion of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law" is a violation of the subsection. The subsection is written in the disjunctive—collection is prohibited unless the agreement expressly authorizes the amount or the amount is permitted by law. Thus, under the plain language of the statute, collection of both amounts expressly authorized by a loan agreement, as well as additional amounts as permitted by law, does not contravene § 1692f(1). See also 53 Fed.Reg. 50,107–08 (§ 1692f(1) meant to proscribe only the addition of fees, interest, and other charges that were not authorized by the debtor or the law). Plaintiffs do not argue that

osition that initiating garnishment proceedings pursuant to state law against a person who has only exempt assets cannot itself constitute a violation of any section of the FDCPA, let alone constitute unfair or unconscionable conduct prohibited under § 1692f. In that case, the district court dismissed the plaintiff's claims that the defendants' initiation of garnishment proceedings was unfair and unconscionable in violation of § 1692f. The court found that the first garnishment did not violate the Act because under Nebraska law a debtor's examination was unavailable until the first garnishment was quashed such that the defendants could not have known that defendants' assets were exempt. *See id.* at *13–14. Unlike Nebraska law, however, Ohio law permits a judgment debtor's examination prior to the filing of garnishment proceedings. *See* Ohio Rev.Code § 2333.09. The district court in *Wilson* also rejected the claim that a second garnishment attempt, where a judgment debtor's examination was available, violated the FDCPA but grounded that decision on evidence that the defendants had a basis for believing that nonexempt funds were deposited in the debtors' account. *See Wilson*, 1986 U.S. Dist. LEXIS 31002, at *14–15. Here, on the facts alleged in the Amended Complaint, Defendants had no such basis for belief.

Defendants protest that they cannot be liable for following the garnishment procedures set forth by the Ohio statute, which requires the filing of the affidavits in question in order to initiate garnishment proceedings. However, Ohio law does not require every attorney who is asked by a client to initiate garnishment proceedings to swear to such an affidavit regardless of whether the attorney has any basis for making the statements contained in such an affidavit. Discovery may show that Messrs. Rohner and Wiseman had sufficient bases for making the attestations such that their actions were not "unfair" or "unconscionable." Taking the allegations in the Amended Complaint in the light most favorable to the Plaintiffs, however, Messrs. Rohner and Wiseman had no basis for making these attestations. Without any authority that filing a false affidavit concerning a debtor's assets in initiation of a garnishment proceeding is not "unfair" or "unconscionable," giving rise to liability under § 1692f- and indeed, such an action could easily meet the ordinary definition of "unfair"—the Court will not grant judgment on the pleadings to Defendants on Plaintiffs' § 1692f claims.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** both the Motion of Defendant Mark N. Wiseman for Judgment on the Pleadings (doc. # 40) and the Motion of Defendant[ ] Weltman, Weinberg & Reis, Co., L.P.A., for Judgment on the Pleadings Pursuant to Fed.R.Civ.P. 12(c) (doc. # 55).

IT IS SO ORDERED.

---

the amounts that Defendants sought to collect were anything other than that amount borrowed plus interest allowed under the loan agreements in question. Thus, Plaintiffs have not alleged actions that would constitute a violation of subsection 1692f(1) because the amounts that Defendants sought to collect were undoubtedly "expressly authorized by the agreement creating the debt." Therefore, whether the collection of funds exempt from garnishment by statute is "permitted by law" is not relevant. Plaintiffs consequently cannot obtain relief on their allegations under § 1692f(1). By the statute's terms, however, the enumeration of specific instances of "unfair and unconscionable" conduct does not limit the application of § 1692f's general prohibition against using "unfair or unconscionable means to collect or attempt to collect any debt."